

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 18, 1959

Honorable Jesse James
State Treasurer
Treasury Department
State of Texas
Austin, Texas

Opinion No. WW-688

Re: Whether a credit memo-
randum invoice issued
by the State Treasurer
in 1954 may be allowed
now as a credit against
a purchase of cigarette
stamps.

Dear Mr. James:

You have certified the following facts for opinion
by this Department:

"In August, 1953, the Associated Grocers of
San Antonio, Texas, purchased the assets of the
Merchants Wholesale, Inc., of Kenedy, Texas.
Included in the fixed assets of the Merchants
Wholesale, Inc., was a Pitney-Bowes cigarette
tax machine together with the tax meter.  In
this meter the gross amount of $1,320.80 of
unused tax (3,302 units or 33,020 impressions)
was transferred or sold to Associated Grocers.

"On September 1, and September 30, 1953, we
suggested to the Merchants Wholesale, to return
the meter to us or to advise us if this meter
was transferred to Associated Grocers.  No reply
was received to our letters nor was the meter
returned to us at that time.

"On November 24, 1953, Mr. Lowell Gault, Auditor
for the Cigarette Tax Division of the State Comp-
troller's Department, made a final audit of the
Merchants Wholesale and advised us that the ma-
chine and the meter was transferred to Associated
Grocers in San Antonio.  Mr. Gault further advised
that Associated Grocers would re-new the lease of
the meter and would purchase a cigarette distri-
butor's permit to use the meter.  About two months
later, Associated Grocers returned the meter to
us with no instructions or advice concerning the
meter.

"This Department held this meter intact until August 30, 1954, at which time we issued a credit memorandum invoice No. 40906 in the gross amount of $1,320.80 and a net amount of $1,281.80 covering the unused tax in the meter and Pitney-Bowes service man checked the meter out of service. The difference between these amounts is the discount allowed on the purchase of cigarette stamps or meter impressions.

"Since that time this credit of $1,281.80 has been carried on our records and no advice or information was received from Associated Grocers until May 22, 1959. On that date a letter request was received seeking a refund for this unused cigarette tax.

"Since almost five years have passed since the credit memorandum invoice was issued, we respectfully request your opinion if this credit now may be allowed against a purchase of cigarette tax stamps."

Section 2a of the Cigarette Tax Act (Article 7047c-1, V.A.C.S.) empowers the Comptroller to authorize licensed cigarette distributors to evidence the payment of the cigarette tax by impression of "tax meter stamps". Unless otherwise specifically provided in the cigarette tax act, all provisions relating to cigarette tax stamps apply to "tax meter stamps."

In 1955, the Legislature raised the rates at which cigarettes were taxed. See Article 7047c-1, Sec. 2, and Sec. 2a. To facilitate the rate change the cigarette tax stamp board was directed to design and have printed or manufactured new cigarette tax stamps. Article 7047c-1, Sec. 3(a). It was further provided in Article 7047c-1, Sec. 3(c):

"The State Treasurer is hereby required to redeem at face value any unused cigarette tax stamps lawfully issued prior to such change in denomination and in the possession of any bona fide owner, by exchanging at face value cigarette tax stamps for cigarette tax stamps of the new denomination. After the effective date of this Act, every person having in his possession stamps of the old denomination shall send them to the Treasurer for exchange at face value for stamps of the new denomination. Such exchange shall be made within thirty (30) days after the effective date of this Act. . . .

After the expiration of thirty days from the
effective date of this Act, stamps of the old
denomination shall be void. . . ."

In view of the above quoted provision, it is
obvious that your question must be answered in the negative.
By allowing a credit for tax meter stamps issued prior to
1955 against a present purchase of cigarette tax stamps,
your department would, in effect, be exchanging such stamps
for stamps of the new denomination.  Since old tax meter
stamps are void, and since they were not exchanged within
thirty days from the effective date of the rate change, your
department has no authority to allow such a credit.

Though your specific question concerns your authority
to give a credit for the tax meter stamps against a purchase
of new cigarette tax stamps, you also state that on May 22,
1959, you received a letter from Associated Grocers seeking
a refund of the unused cigarette tax.  Since it is expressly
provided that the tax meter stamps in question are void, it
is implicit that no refund for such stamps could be made.
However, there appears to be an additional reason why a
refund is unauthorized.  Sec. 3(1) of Art. 7047c-1, states:

". . .Provided further, that the Treasurer
shall be authorized to make refunds on unused
stamps on unbroken sheets of not less than
one hundred (100) stamps each to the person
who purchased said stamps only when proof
satisfactory to said Treasurer is furnished
that any stamps upon which a refund is requested
were properly purchased from said Treasurer
and paid for by the person requesting such
refund."

From the facts in your letter, it is obvious that
the Associated Grocers cannot furnish proof that they personally
purchased the stamps in question from the Treasurer.  Con-
sequently, a refund is not authorized under the act.

### SUMMARY

Tax meter stamps issued prior to the
effective date of the 1955 cigarette tax
rate change became void thirty days after
the effective date of such change; conse-
quently, the stamps cannot be exchanged
for or allowed as a credit against a pre-
sent purchase of cigarette tax stamps, nor
can any refund be made thereon.  Further,

the State Treasurer is prohibited from making a refund on cigarette tax stamps to anyone other than the person who actually purchased such stamps from the Treasurer.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _Jack N. Price_
  Jack N. Price
  Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
George P. Blackburn, Chairman

C. K. Richards
Howard Mays

REVIEWED FOR THE ATTORNEY GENERAL
By:  W. V. GEPPERT